# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PLANNED PARENTHOOD OF THE
GREAT NORTHWEST, FEMINIST
WOMEN'S HEALTH CENTERS d/b/a
CEDAR RIVER CLINICS, AURORA
MEDICAL SERVICES, SEATTLE
MEDICAL AND WELLNESS CLINIC,
ALL WOMEN'S HEALTH NORTH,
MOUNT BAKER PLANNED
PARENTHOOD, and STATE OF
WASHINGTON - DEPARTMENT OF
HEALTH,

Respondents,

v.

JONATHAN BLOEDOW, an individual,

Appellant.

No. 71039-7-I

DIVISION ONE

PUBLISHED OPINION

FILED:  May 18, 2015

SCHINDLER, J. — By statute, the Washington State Department of Health (DOH) collects, analyzes, and publishes health care data from state agencies and private health care providers.  But the statute expressly provides that "data in any form where the patient or provider of health care can be identified" shall not be subject to disclosure under the Public Records Act (PRA), chapter 42.56 RCW.[1]  Jonathan Bloedow submitted seven separate PRA requests to DOH to obtain the induced termination of pregnancy data reports that health care providers Planned Parenthood Everett,

---

[1] RCW 43.70.050(2).

Feminist Women's Health Center Renton, Aurora Medical Services, Planned Parenthood Kenmore, All Women's Health North, Seattle Medical and Wellness Center, and Planned Parenthood Bellingham were required to submit to DOH. On cross motions for summary judgment, the court ruled the reports of induced abortions submitted to DOH were exempt from disclosure under the PRA and issued an injunction. We hold that providing the records requested by Bloedow under the PRA would violate the plain and unambiguous language of the statute that prohibits disclosure of data in a format that identifies the health care provider. We also conclude the record establishes disclosure of induced abortion data that identifies the health care provider is not in the public interest and would substantially and irreparably damage the health care providers and a vital governmental function, and affirm.[2]

Uniform Health Care Information Act

Washington's Uniform Health Care Information Act (UHCIA), chapter 70.02 RCW, requires health care providers to submit health care information to federal, state, or local public health authorities "to the extent the health care provider is required by law to report health care information . . . to determine compliance with state or federal licensure, certification or registration rules or laws; or when needed to protect the public health." Former RCW 70.02.050(2)(a) (2007).[3]

UHCIA addresses access and disclosure of health care information. The legislature expressly finds health care information "is personal and sensitive information

---

[2] The court also ruled certain information contained in the spreadsheets was exempt under the Uniform Health Care Information Act (UHCIA), chapter 70.02 RCW. Because we hold that responding to the PRA requests violates RCW 43.70.050(2), we need not address redaction of the records under UHCIA.

[3] Effective July 1, 2014, RCW 70.02.050(2)(a) provides that any health care information obtained under this subsection is exempt from production under the PRA: "Any health care information obtained under this subsection is exempt from public inspection and copying pursuant to chapter 42.56 RCW." LAWS OF 2013, ch. 200, § 3.

that if improperly used or released may do significant harm to a patient's interests in privacy, health care, or other interests." RCW 70.02.005(1). The legislature also finds that in order to "retain the full trust and confidence of patients, health care providers have an interest in assuring that health care information is not improperly disclosed and in having clear and certain rules for the disclosure of health care information." RCW 70.02.005(3). Former RCW 70.02.050(1)(b) allows a health care provider to disclose health care information without the patient's authorization if the provider reasonably believes that the recipient "(i) [w]ill not use or disclose the health care information for any other purpose; and (ii) [w]ill take appropriate steps to protect the health care information."

DOH

DOH has a duty to "assure a healthy environment and minimum standards of quality in health care facilities and among health care professionals." RCW 43.70.005. The legislature requires DOH to monitor health care costs, maintain "minimal standards for quality in health care delivery," and provide "general oversight and planning for all the state's activities as they relate to the health of its citizenry." RCW 43.70.005.

To "promote and assess the quality, cost, and accessibility of health care throughout the state," the legislature directs DOH to "create an ongoing program of data collection, storage, accessibility, and review." RCW 43.70.050(1). RCW 43.70.050(1) states:

> The legislature intends that the department [of health] and board [of health] promote and assess the quality, cost, and accessibility of health care throughout the state as their roles are specified in chapter 9, Laws of 1989 1st ex. sess. in accordance with the provisions of this chapter. In furtherance of this goal, the secretary [of health] shall create an ongoing program of data collection, storage, assessability, and review. The

3

legislature does not intend that the department conduct or contract for the conduct of basic research activity. The secretary may request appropriations for studies according to this section from the legislature, the federal government, or private sources.

RCW 43.70.050(2) requires all state agencies "which collect or have access to population-based, health-related data" to provide "access to such data" and encourages private entities to provide DOH "access to such data in their possession." The legislature authorizes DOH to adopt rules necessary to carry out its responsibility for the collection and disclosure of health care data. RCW 43.70.040. All data provided to DOH as well as research and findings are "available to the general public." RCW 43.70.050(5). RCW 43.70.050(5) states:

> Any data, research, or findings may also be made available to the general public, including health professions, health associations, the governor, professional boards and regulatory agencies and any person or group who has allowed the secretary access to data.

However, RCW 43.70.050(2) specifically states that "[s]uch data in any form where the patient or provider of health care can be identified" shall not be disclosed or subject to disclosure under the PRA.[4]

Induced Abortion Heath Care Data

WAC 246-490-100 requires any hospital or facility performing induced abortions to collect data and submit a report to DOH with specific details about each procedure on forms prescribed by the secretary of health. In addition to the information required under WAC 246-490-100, the DOH forms require health care providers to provide the patient's city and county of residence, the patient's race, whether the patient is of Hispanic ethnic origin, whether the patient has had previous spontaneous or induced abortions, and the date of the patient's last normal menses.

---

[4] Chapter 43.70 RCW does not define "provider of health care." See RCW 43.70.010.

4

WAC 246-490-100 provides:

> Each hospital and facility where lawful induced abortions are performed during the first, second, or third trimester of pregnancy shall, on forms prescribed and supplied by the secretary, report to the department during the following month the number and dates of induced abortions performed during the previous month, giving for each abortion the age of the patient, geographic location of patient's residence, patient's previous pregnancy history, the duration of the pregnancy, the method of abortion, any complications, such as perforations, infections, and incomplete evacuations, the name of the physician or physicians performing or participating in the abortion and such other relevant information as may be required by the secretary. All physicians performing abortions in nonapproved facilities when the physician has determined that termination of pregnancy was immediately necessary to the meet a medical emergency, shall also report in the same manner, and shall additionally provide a clear and detailed statement of the facts upon which he or she based his or her judgment of medical emergency.

WAC 246-490-110 states that the information the health care providers submit to DOH "shall not be disclosed publicly in such a manner as to identify" an individual or a health care provider facility. WAC 246-490-110 provides:

> To assure accuracy and completeness in reporting, as required to fulfill the purposes for which abortion statistics are collected, information received by the board or the department through filed reports or as otherwise authorized, shall not be disclosed publicly in such a manner as to identify any individual without their consent, except by subpoena, nor in such a manner as to identify any facility except in a proceeding involving issues of certificates of approval.

DOH aggregates the data submitted by state agencies and the health care providers and publishes numerous statistical reports concerning abortions performed in the state of Washington. All of the reports are publically available on the DOH website and free of charge.[5] DOH currently publishes 26 reports concerning abortion and pregnancy organized by topic and "categorized by demographic characteristics." See http://www.doh.wa.gov/DataandStatisticalReports/VitalStatisticsandPopulationData/

---

[5] See http://www.doh.wa.gov/DataandStatisticalReports/VitalStatisticsandPopulationData/ AbortionPregnancy (last visited Apr. 24, 2015).

AbortionPregnancy/AbortionPregnancyTablesbyTopic (last visited Apr. 24, 2015). DOH also publishes reports with information on induced abortion and pregnancy "categorized by year of occurrence," and tables showing "trends in induced abortion and pregnancy information." See http://www.doh.wa.gov/DataandStatisticalReports/VitalStatisticsand PopulationData/AbortionPregnancy (last visited Apr. 24, 2015). Consistent with RCW 43.70.050(2) and WAC 246-490-110, the published reports and tables do not contain any information that could identify a patient or the health care provider performing abortions.

PRA Requests

In November 2012, Jonathan Bloedow submitted six separate but identical PRA requests to DOH to obtain "a data extract of Reports of Induced Terminations of Pregnancy that have occurred during the most recent 12-month period" for Planned Parenthood Everett, Feminist Women's Health Center Renton, Aurora Medical Services, Planned Parenthood Kenmore, All Women's Health North, and Seattle Medical and Wellness Center. On May 20, 2013, Bloedow made a seventh PRA request for "the abortion records held by the DOH for all pregnancy terminations that have occurred at the Bellingham Planned Parenthood . . . for the most recent 36-month period."

In response to the PRA requests, DOH prepared a spreadsheet with the induced abortion data for each health care provider. Each spreadsheet contains 33 columns of information. Using a unique file number, the spreadsheets list the woman's age, city of residence, county of residence, state of residence, race, the date of the abortion, previous spontaneous abortions, previous live births, previous induced abortions,

method of abortion, estimate of gestation in weeks, date of last menses, complications, and any anomalies.

Before releasing the spreadsheets to Bloedow, DOH notified each of the named health care providers of the right to seek an injunction under the PRA to prevent disclosure. The e-mail from DOH to Bloedow states that although DOH "originally indicated that [it] would provide responsive records by April 1, 2013[,] [p]ursuant to RCW 42.56.540[,] the Department of Health is exercising [its] 'option of notifying persons named in the record or to whom a record specifically pertains, that release of a record has been requested.' "

Planned Parenthood of the Great Northwest, Feminist Women's Health Centers doing business as Cedar River Clinics, Aurora Medical Services, Seattle Medical and Wellness Clinic, All Women's Health North, and Mount Baker Planned Parenthood (collectively the health care providers), "on behalf of themselves and other family planning providers whose abortion information has been requested," filed a complaint for a declaratory judgment and injunctive relief to prevent DOH from disclosing the records to Bloedow.

The complaint alleges Planned Parenthood has 22 health centers in Western Washington and offers abortion services at 20 locations. Cedar River Clinics has health centers in Tacoma and Renton and offers abortion services at both locations. Aurora Medical Services "provides reproductive health services at its clinic in Seattle." Seattle Medical and Wellness Clinic and All Women's Health North each provide "reproductive health services" at clinics in Seattle.

7

The health care providers alleged the records were exempt from disclosure under RCW 43.70.050(2) and WAC 246-490-110. The health care providers asserted release of the spreadsheets will associate abortions with a particular facility. The complaint also alleged information in the spreadsheets could be linked to specific patients and was "exempt from disclosure under RCW 70.02 . . . as the information can be 'readily associated with' patients' identities." The complaint states that under the federal Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. sections 1320d to 1320d-8, such "identifiable data" would include "the date of service [and] the residence of a patient." The health care providers asserted "release of the data would be highly offensive to a reasonable person and is of no legitimate public concern," and the release of private health care information violates "the reproductive privacy rights of individuals in Washington State" under the Reproductive Privacy Act, chapter 9.02 RCW.

On April 26, 2013, the health care providers filed a motion for a temporary restraining order. In a declaration in support, Planned Parenthood of the Great Northwest Chief Executive Officer Christine Charbonneau states Planned Parenthood has "a history with Bloedow, which includes harassment of staff and our business associates, as well as attempts to learn the identity of our patients." Charbonneau describes several incidents where Bloedow contacted or attempted to contact staff or patients of Planned Parenthood clinics. The court entered a temporary restraining order.

The health care providers filed a motion for summary judgment and entry of an injunction. The health care providers argued that as a matter of law, the records were

exempt from production under RCW 43.70.050(2) and WAC 246-490-110. The health care providers argued DOH cannot release health care information about abortions that identifies a facility where an abortion was performed or that contains the patient's city or county of residence or date the abortion was performed, and requested an order enjoining DOH from disclosing the data as requested by Bloedow.

The health care providers asserted release of the data in the form requested by Bloedow would, "per se, disclose the identity of facilities where abortions have been performed" in violation of RCW 43.70.050(2) and WAC 246-490-110. The health care providers argued the identification of induced abortion data that is directly related to the abortion facilities is not of legitimate public concern and disclosure would inhibit women from exercising "their constitutional and statutory right to access reproductive health services." In the alternative, the health care providers asserted that under UHCIA, certain "identifying" patient information must be redacted, including the patient's city and county of residence and the date of the abortion.

Bloedow filed a cross motion for summary judgment. Bloedow argued the records were not exempt from disclosure under the PRA and the health care providers did not establish they were entitled to an injunction preventing production of the requested records. Bloedow requested an order requiring DOH to provide "all records requested" within five business days. Alternatively, Bloedow asked the court to conduct an in camera review of the records.

At the conclusion of the hearing, the court asked DOH to submit two sets of records for in camera review—the spreadsheets DOH prepared to release to Bloedow

9

for each facility, and spreadsheets redacting the patient's city and county of residence and the date of the abortion.[6]

The court entered an order granting the health care providers' motion for summary judgment and entry of a permanent injunction prohibiting DOH from releasing the requested records. The court ruled the records of induced abortions for each of the named health care providers were exempt from disclosure under RCW 43.70.050(2) and WAC 296-490-110. The court also ruled that disclosing the city and county of residence of the patient and the date of the abortion "would violate [UHCIA], RCW 70.02 et seq.," because such information is " 'identifying' or 'readily associated with' patients' identities." Bloedow appeals. On appeal, DOH does not disagree with the court's ruling.

The PRA and RCW 43.70.050(2)

Bloedow contends the court erred in denying his motion for summary judgment and refusing to require DOH to disclose the records he requested under the PRA. The health care providers assert producing records in the form requested by Bloedow violates the express language of RCW 43.70.050(2).

We review the decision on summary judgment de novo. Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Judicial review of the denial of a request under the PRA and the request for injunctive relief under the PRA is de novo. RCW 42.56.550(3); Bainbridge Island Police Guild v. City of Puyallup, 172 Wn.2d 398, 407, 259 P.3d 190 (2011). The party seeking to enjoin production of records under the PRA "bears the burden of proving an exemption or statute prohibits production in whole or in part." Bainbridge Island, 172 Wn.2d 398 at 407-08.

---

[6] The court entered an order sealing the records DOH submitted for in camera review.

The PRA is " 'a strongly worded mandate for broad disclosure of public records' " that must be liberally construed. Bainbridge Island, 172 Wn.2d at 408 (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)); Fisher Broadcasting-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 521, 326 P.3d 688 (2014). The PRA requirement of disclosure is broadly construed and exemptions are narrowly construed to "assure that the public interest will be fully protected." RCW 42.56.030.

RCW 42.56.070 requires agencies to provide all records that are not exempt and to redact only information that falls within a specific exemption. RCW 42.56.070(1) states, in pertinent part:

> Each agency . . . shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of *subsection (6) of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records. To the extent required to prevent an unreasonable invasion of personal privacy interests protected by this chapter, an agency shall delete identifying details in a manner consistent with this chapter when it makes available or publishes any public record.[7]

RCW 42.56.070 expressly incorporates into the PRA other statutes such as RCW 43.70.050(2) that either exempt or prohibit disclosure of specific information or records. The "other statute" exemption avoids any inconsistency and allows other state statutes and federal regulations to supplement the PRA's exemptions. Ameriquest Mortg. Co. v. Office of Att'y Gen., 170 Wn.2d 418, 440, 241 P.3d 1245 (2010); see also Fisher Broadcasting, 180 Wn.2d at 525-28 (holding that RCW 9.73.090(1)(c) of Washington's privacy act is an "other statute" prohibiting disclosure of video recordings made by police that "relate to actual, pending litigation"); Ameriquest, 170 Wn.2d at 424, 440 (holding that a federal statute "requiring financial institutions to 'respect the privacy

---

[7] Emphasis added.

11

of its customers' and 'protect the security and confidentiality of those customers' nonpublic personal information' . . . together with the [Federal Trade Commission] rule enforcing it" qualifies as an "other statute"); Hangartner v. City of Seattle, 151 Wn.2d 439, 453, 90 P.3d 26 (2004) (holding the attorney-client privilege as codified at RCW 5.60.060(2)(a) is an "other statute"); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 262, 884 P.2d 592 (1994) (holding the Uniform Trade Secrets Act, chapter 19.108 RCW, is an "other statute"). "All exceptions, including 'other statute' exceptions, are construed narrowly." Fisher Broadcasting, 180 Wn.2d at 525; see RCW 42.56.030. To show an exemption applies, the burden of proof is on the party seeking to prevent production. RCW 42.56.550(1); Ameriquest, 177 Wn.2d at 486.

RCW 43.70.050 requires DOH to collect, assess, and review population-based health care data from state agencies and private health care providers to address "emerging health needs." RCW 43.70.050(1), (2). While DOH makes "[a]ny data, research, or findings" available to the public under RCW 43.70.050(5), RCW 43.70.050(2) specifically provides that health-related data submitted to DOH by health care providers shall not be disclosed or subject to disclosure under the PRA "in any form where the patient or provider of health care can be identified." RCW 43.70.050(2) states:

> All state agencies which collect or have access to population-based, health-related data are directed to allow the secretary access to such data. This includes, but is not limited to, data on needed health services, facilities, and personnel; future health issues; emerging bioethical issues; health promotion; recommendations from state and national organizations and associations; and programmatic and statutory changes needed to address emerging health needs. Private entities, such as insurance companies, health maintenance organizations, and private purchasers are also encouraged to give the secretary access to such data in their possession. The secretary's access to and use of all data shall be in

12

accordance with state and federal confidentiality laws and ethical guidelines. Such data in any form where the patient or provider of health care can be identified shall not be disclosed, subject to disclosure according to chapter 42.56 RCW, discoverable or admissible in judicial or administrative proceedings. Such data can be used in proceedings in which the use of the data is clearly relevant and necessary and both the department and the patient or provider are parties.

We review statutory interpretation de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our objective is to ascertain and give effect to legislative intent. Campbell & Gwinn, 146 Wn.2d at 9. Statutory interpretation begins with the plain meaning of the statute. When the meaning of the statute is plain on its face, the court must give effect to that plain meaning as the expression of the legislature's intent. Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007); City of Spokane v. Spokane County, 158 Wn.2d 661, 673, 146 P.3d 893 (2006).

We look first to the text of a statute to determine its meaning. Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). If a statute is plain and unambiguous, the meaning of the statute must be determined from the wording of the statute itself. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 608-09, 998 P.2d 884 (2000). Where a statute is clear on its face, its plain meaning should " 'be derived from the language of the statute alone.' " Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 41, 156 P.3d 185 (2007) (quoting Kilian v. Atkinson, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)). If the plain language is subject to only one interpretation, our inquiry is at an end. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

We also employ traditional rules of grammar in discerning the plain language of the statute. In re Forfeiture of One 1970 Chevrolet Chevelle, 166 Wn.2d 834, 838-39,

215 P.3d 166 (2009). "[W]e 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). A construction that would render a portion of a statute meaningless or superfluous should be avoided. Ford, 160 Wn.2d at 41. Statutes must be interpreted and construed so that all the language used is given effect. Davis v. Dep't of Licensing, 137 Wn.2d 957, 963, 977 P.2d 554 (1999). "We avoid interpretations 'that yield unlikely, absurd or strained consequences.' " Broughton Lumber Co. v. BNSF Ry. Co., 174 Wn.2d 619, 635, 278 P.3d 173 (2012) (quoting Kilian, 147 Wn.2d at 21).

RCW 43.70.050(2) expressly states that health care "data in any form where the patient or provider of health care can be identified shall not be disclosed, subject to disclosure according to chapter 42.56 RCW, discoverable or admissible in judicial or administrative proceedings."[8] The use of the word "shall" is a mandatory directive. See Amren v. City of Kalama, 131 Wn.2d 25, 35, 929 P.2d 389 (1997); Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wn.2d 894, 907-08, 949 P.2d 1291 (1997); Strenge v. Clarke, 89 Wn.2d 23, 29, 569 P.2d 60 (1977). The mandatory directive "shall not be" modifies the three following terms that are set off by commas—"disclosed," "subject to disclosure according to chapter 42.56 RCW," and "discoverable or admissible in judicial or administrative proceedings"—indicating the three terms are alternatives to each other and meant to be read together as a common

---

[8] Emphasis added.

idea.[9] <u>Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles</u>, 148 Wn.2d 224, 240, 59 P.3d 655 (2002); <u>see also</u> William Strunk, Jr. & E.B. White, <u>The Elements of Style</u> 30 (3d ed. 1979).

We hold RCW 43.70.050(2) is an "other statute" under the PRA and a specific statutory provision that governs a PRA request for disclosure of health care data where the patient or provider can be identified. <u>Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.</u>, 182 Wn.2d 342, 356, 340 P.3d 849 (2015) (a general statutory provision must yield to a more specific provision). The plain and unambiguous language of the statute exempts from disclosure under the PRA health-related data requested "in any form where the patient or provider . . . can be identified." RCW 43.70.050(2).

In response to the PRA requests for induced termination of pregnancy data submitted to DOH by each of the named health care providers, DOH prepared a separate spreadsheet with data for each provider. The spreadsheets alone do not identify the health care providers. However, there is no dispute that providing the spreadsheets in response to the PRA requests will identify each health care provider in connection with the data that provider submitted to DOH. Bloedow concedes the "targeted" PRA requests for each identified health care provider seeks data submitted to DOH by "specific abortion facilities." Bloedow also concedes "de facto identification of specific abortion facilities" is "a necessary part of the response" to his PRA requests. Nonetheless, Bloedow relies on <u>Koenig v. City of Des Moines</u>, 158 Wn.2d 173, 142

---

[9] <u>See</u> RCW 43.70.050(2).

P.3d 162 (2006), and Bainbridge Island to argue that the targeted requests cannot be considered in determining whether the records are exempt from disclosure. Koenig and Bainbridge Island are distinguishable.

In Koenig, the father of a child victim of sexual assault submitted a PRA request to the city, identifying the child by name and referencing the case number in asking for the city to provide all records concerning the sexual assault of his daughter. Koenig, 158 Wn.2d at 178. The city denied the request under a statute that barred disclosure of information revealing the identity of child victims of sexual assault, former RCW 42.17.31901 (1992).[10] Koenig, 158 Wn.2d at 181. Under former RCW 42.17.31901, "[i]nformation revealing the identity of child victims of sexual assault . . . is confidential and not subject to public disclosure." The statute defined "identifying information" to mean "the child victim's name, address, location, photograph, and in cases in which the child victim is a relative or stepchild of the alleged perpetrator, identification of the relationship between the child and the alleged perpetrator." See Koenig, 158 Wn.2d at 181.[11] The city argued that even with redaction, "the very act of disclosure would identify [his daughter] as a child victim of sexual assault." Koenig, 158 Wn.2d at 181.

The Washington State Supreme Court reversed. The court held the plain and unambiguous language of former RCW 42.17.31901 "excludes from disclosure only the

---

[10] Repealed by LAWS OF 2005, ch. 274, § 429.

[11] Former RCW 42.17.31901 states:

**Identity of child victims of sexual assault exempt.** Information revealing the identity of child victims of sexual assault who are under age eighteen is confidential and not subject to public disclosure. Identifying information means the child victim's name, address, location, photograph, and in cases in which the child victim is a relative or stepchild of the alleged perpetrator, identification of the relationship between the child and the alleged perpetrator.

(Boldface in original.)

16

information falling within one of the enumerated categories, and not entire records." Koenig, 158 Wn.2d at 182.

The dissent argued "the entire record should be exempt because to disclose the record with identifying information blacked out would be meaningless protection in light of the nature of the request." Koenig, 158 Wn.2d at 193 (Fairhurst, J., dissenting). The majority rejected that argument, stating the dissent cited no statutory language or case law to support the notion that we may "look beyond the four corners of the records at issue" or the "nature of the request" in determining whether the records were properly withheld. Koenig, 158 Wn.2d at 182-83.

Unlike in Koenig where the plain language of the statute exempted only specifically defined information from disclosure,[12] RCW 43.70.050(2) unambiguously exempts from disclosure under the PRA health-related data "in any form where the patient or provider can be identified."[13] Disclosing the records as requested by Bloedow would violate the clear and unambiguous terms of RCW 43.70.050(2).

In Bainbridge Island, the PRA requests sought records related to the investigation of sexual misconduct by a police officer. Bainbridge Island, 172 Wn.2d at 404-05. Because newspaper articles had previously identified the police officer, the PRA requests identified the officer by name. Bainbridge Island, 172 Wn.2d at 405-06. The police officer sought an injunction to prevent disclosure of the records. Bainbridge Island, 172 Wn.2d at 406.

The Washington State Supreme Court addressed whether the records fell under the personal information exemption or the investigative records exemption of the PRA.

---

[12] See former RCW 42.17.31901.
[13] Emphasis added.

Bainbridge Island, 172 Wn.2d at 408-09. The lead opinion[14] held the officer maintained "his right to privacy in his identity, regardless of the media coverage of this unsubstantiated allegation," and the agency "should look to the contents of the document," not the knowledge of third parties, in deciding whether "the subject of a report has a right to privacy in their identity." Bainbridge Island, 172 Wn.2d at 413-14.

> Under the PRA, [the police officer] maintains his right to privacy in his identity, regardless of the media coverage of this unsubstantiated allegation. An agency should look to the contents of the document, and not the knowledge of third parties when deciding if the subject of a report has a right to privacy in their identity. Even though a person's identity might be redacted from a public record, the outside knowledge of third parties will always allow some individuals to fill in the blanks. But just because some members of the public may already know the identity of the person in the report does not mean that an agency does not violate the person's right to privacy by confirming that knowledge through its production.

Bainbridge Island, 172 Wn.2d at 413-14.

The lead opinion concluded the identity of the police officer should be redacted but the remainder of the reports were not exempt from production because "the nature of the investigations is a matter of legitimate public concern." Bainbridge Island, 172 Wn.2d at 417-18.

Unlike the exemptions in the Bainbridge Island case, RCW 43.70.050(2) does not turn on whether an individual's right to privacy would be violated by disclosure. Accordingly, it is not necessary to conduct the same kind of balancing inquiry to determine whether the exemption applies. Because production of the records in

---

[14] Four justices concurred in the majority. Bainbridge Island, 172 Wn.2d at 424. Four justices concurred in part, agreeing with the lead opinion that the records were not exempt but disagreeing that redaction of the officer's identity was proper. Bainbridge Island, 172 Wn.2d at 424-31. One justice dissented, arguing the records were exempt under the investigative records exemption. Bainbridge Island, 172 Wn.2d at 431.

response to the targeted requests would identify the health care provider, the records are exempt from disclosure under RCW 43.70.050(2).

Further, as the health care providers point out, Bloedow is not foreclosed from obtaining abortion health care data and there are a number of ways DOH could release the spreadsheets "without disclosing the facility at which each woman had her abortion." For example, the "data could be released in one spreadsheet containing the information from all the facilities combined, ensuring that no patient can be connected to a particular facility and that no particular facility is disclosed as having provided abortions."[15]

Bloedow argues that even if disclosing the records in response to his requests would violate RCW 43.70.050(2), because RCW 43.70.050(2) conflicts with RCW 42.56.210(1), the PRA controls.

RCW 42.56.030 states that "[i]n the event of conflict between the provisions of [the PRA] and any other act, the provisions of [the PRA] shall govern."

We hold there is no conflict between RCW 43.70.050 and RCW 42.56.210(1). RCW 42.56.210(1) provides that "[n]o exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons." RCW 42.56.210(1) states:

> Except for information described in *RCW 42.56.230(3)(a) and confidential income data exempted from public inspection pursuant to RCW 84.40.020, the exemptions of this chapter are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought. No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons.[16]

---

[15] Emphasis in original.
[16] Emphasis added.

Consistent with the PRA, RCW 43.70.050(5) permits disclosure of "[a]ny data, research, or findings" but under RCW 43.70.050(2), prohibits disclosure under the PRA in any manner that identifies a patient or provider.

Injunction

Bloedow also contends the health care providers did not meet their burden for injunctive relief under RCW 42.56.540. Bloedow argues disclosure of the records is in the public interest and would not "substantially and irreparably damage" any person. See RCW 42.56.540.[17]

Under RCW 42.56.540, an agency or "a person who is named in the record or to whom the record specifically pertains" may seek an injunction to prevent disclosure of a requested record.[18] The party seeking the injunction must show "(1) that the record in question specifically pertains to that party, (2) that an exemption applies, and (3) that the disclosure would not be in the public interest and would substantially and irreparably harm that party or a vital government function." Ameriquest, 177 Wn.2d at 486-87.

Under UHCIA, the legislature expressly finds that "[h]ealth care information is personal and sensitive information that if improperly used or released may do significant harm" to a patient and health care provider. RCW 70.02.005(1). "In order to retain the

---

[17] In support, Bloedow repeatedly quotes from Laws of 2001, chapter 98, section 1 to argue that the legislature has determined access to demographic records are in the public interest because "public health and safety is promoted when the public has knowledge that enables them to make informed choices about their health and safety," and because "the public has a right to information necessary to protect members of the public from harm caused by alleged hazards or threats to the public." But this legislative finding relates to "the public disclosure of specific and unique information related to criminal acts of terrorism." LAWS OF 2001, ch. 98, § 1 (emphasis added).

[18] RCW 42.56.540 provides, in pertinent part:

The examination of any specific public record may be enjoined if, upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, the superior court . . . finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

20

full trust and confidence of patients," health care providers "have an interest in assuring that health care information is not improperly disclosed and in having clear and certain rules for the disclosure of health care information." RCW 70.02.005(3).

The public has an interest in the quality, cost, and accessibility of health care, including abortion services. The data Bloedow requests is available in an aggregated format in the detailed reports DOH publishes on its website. But the record supports the conclusion that the public interest in obtaining statistical data about abortions in Washington does not extend to information that identifies patients or health care providers. The public has no legitimate interest in the health care or pregnancy history of any individual woman or where any particular abortion was performed.

The record also establishes that disclosure would substantially and irreparably damage a vital government interest. In adopting WAC 246-490-110, DOH found that in order to ensure health care providers submit accurate and complete health information, the providers must be guaranteed that the data provided will not be disclosed to the public in a way where the patient or provider could be identified. The health care providers state in their declarations that they take their "responsibilities for patient confidentiality and privacy extremely seriously," and in complying with the requirements to provide data about abortions performed, they rely on DOH's guaranty in WAC 246-490-110 that it will not disclose the information in any form that will identify either the patient or the health care provider. Disclosure of the records would jeopardize the ability of DOH to obtain information from health care providers about abortions performed and, consequently, the requirement to "promote and assess the quality, cost,

21

and accessibility of health care." RCW 43.70.050(1). We conclude the health care providers have met their burden for an injunction under RCW 42.56.540.

We hold that the release of the records as requested by Bloedow under the PRA violates RCW 43.70.050(2), and affirm entry of the injunction.

WE CONCUR: