**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 24, 2023

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 24, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WASHINGTON FEDERATION OF STATE EMPLOYEES, COUNCIL 28, et al.,[†] | ) ) ) | No. 101093-1 |
| Respondents, | ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, et al., | ) | En Banc |
| Respondents, | ) ) ) | |
| FREEDOM FOUNDATION, | ) ) | |
| Petitioner. | ) ) | Filed: <u>August 24, 2023</u> |

MADSEN, J.—The Freedom Foundation (Foundation) requested the identities and

workplace contact information for public employees. To prevent disclosure of this

information, affected employees sought declaratory and injunctive relief through the

Washington State Federation of State Employees and other labor unions (Unions). The

Unions alleged their members, who are victims of domestic violence, sexual abuse,

---

[†] See Appendix for a list of all respondents.

No. 101093-1

stalking, and harassment, possess a constitutional liberty interest in personal security that the government would violate by releasing the requested information. The courts below agreed. On appeal, the Foundation argues no such fundamental right exists, the Unions lack standing, and the Unions failed to bring justiciable claims. During the course of this case, the Washington State Legislature enacted a law exempting the requested information from disclosure under the Public Records Act (PRA), ch. 42.56 RCW.

We hold that the Unions have standing and brought justiciable claims on behalf of their members. However, the Unions did not demonstrate particularized harm to affected public employees; therefore, they do not satisfy the PRA injunction standard. RCW 42.56.540. We affirm the Court of Appeals on these grounds. We reverse the Court of Appeals' ruling on declaratory relief because this matter can be resolved on nonconstitutional grounds. Accordingly, we remand this case to the superior court to apply the new statutory exemption.

BACKGROUND

The Foundation is a nonprofit organization that seeks "to promote individual liberty, free enterprise, and limited accountable government." Clerk's Papers (CP) at 218. As part of its mission to alert public employees of their right to opt out of union membership, the Foundation filed public records requests for employee contact information. The Foundation then began filing requests with state and local agencies seeking such information. Specifically, the Foundation sought public employees'

- first, middle, and last name
- job title

2

No. 101093-1

- full birthdate
- work e-mail address
- employer agency/department
- name/title of exclusive bargaining representative/union
- FTE status/percentage
- current annual salary
- duty station location/address

CP at 13.

The Unions filed a complaint for declaratory and injunctive relief against the agencies contacted by the Foundation. The Unions argued that the release of the requested information for abuse survivors would violate their fundamental privacy and personal safety rights under substantive due process. *See* WASH. CONST. art. I, §§ 3, 7; U.S. CONST. amend. XIV. The trial court granted an ex parte order precluding the agencies named in the complaint from disclosing the information until a later show cause hearing.

The Unions then moved for leave to file redacted declarations and for the original declarations to be filed under seal. The motion stated that survivors would file sealed declarations in support of the application for preliminary injunction, which would name the declarants and describe information that could lead their abusers to locating them. At later hearings, the Unions explained that they "were able to get some declarations from survivors . . . willing to provide those to the court if we can provide them under seal, and we haven't had time to have the court review that motion." 1 Rep. of Proc. (RP) (Dec. 27, 2019) at 13. Instead, the Unions submitted declarations from representatives who had communicated with survivors, sharing incidents of victimization, efforts to

3

No. 101093-1

avoid abusers, and fears for the survivors' personal safety. *E.g.*, CP at 51-55 (Decl. of Kent Stanford) (detailing the experience of a union member who was a survivor of domestic violence and who took "drastic steps" to avoid their abuser, how that abuser violated protective orders and forced the survivor to move residences and find a new school for their children).

The Unions subsequently filed a motion for preliminary injunction to be heard in lieu of a show cause hearing. The Unions also filed an amended complaint identifying additional agencies to be prevented from releasing information to the Foundation.

The trial court granted the preliminary injunction. The order prevented the public entities named in the Unions' complaint from releasing the "names, birthdates, duty station/location and work email," that is "personal information," for employees who provided documentation supporting their (and/or their family members') status as abuse survivors. CP at 57. The order also found that disclosure would violate those employees' privacy rights under the state and federal constitutions by placing their personal bodily security and lives in jeopardy. The trial court enjoined disclosure for a number of months to allow the named agencies to identify the protected employees while all parties filed status reports in the interim.

After the preliminary injunction was granted, the Foundation continued requesting employee contact information from the same and other agencies. In response, the Unions filed a second amended complaint asking the trial court to extend the preliminary injunction to the new agencies, which the court granted.

No. 101093-1

Despite the extension of the preliminary injunction, the Foundation continued requesting the same information from different state agencies. The Unions continued amending their complaint in response.

The trial court granted the Unions' motion for summary judgment and issued a permanent injunction.[1] The injunction order stated that the disclosure of personal information for survivors of abuse would violate their constitutional rights. Based on this conclusion, the court exempted disclosure and permanently enjoined the release of the requested information for the protected employees. About 1,600 public employees were identified and represented in court by nearly 50 labor unions.

The Foundation appealed the preliminary injunction; the orders extending it; and the order granting summary judgment, declaratory relief, and permanent injunction. *Wash. Fed'n of State Emps., Council 28 v. State*, 22 Wn. App. 2d 392, 403, 511 P.3d 119 (2022) (*WFSE*). The Foundation argued primarily that no constitutional right existed to protect the requested information and that the Unions presented insufficient facts to justify relief. *Id.* at 404.

First, the Court of Appeals concluded that the Unions brought a justiciable controversy under the Uniform Declaratory Judgment Act (UDJA), ch. 7.24 RCW. *Id.* at 406-07. The parties presented an actual dispute, with opposing and substantial interests for which judicial determination would be final and conclusive. *Id.* at 406 (citing *To-Ro*

---

[1] The court originally granted the order for summary judgment and permanent injunction on July 17, 2020. The Unions moved for modification to address overly broad language in the order. The court agreed and revised the order to limit relief to previously identified "protected employees." CP at 6448.

No. 101093-1

*Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). Based on the declaration from domestic violence expert Grace Huang, the court decided that the threat of harm to some public employees was more than hypothetical and a determination on the scope of an employees' right to a PRA exemption would be conclusive. *Id.* at 407.

Next, the court held that the Unions failed to present sufficient, admissible evidence to satisfy the PRA injunction standard, RCW 42.56.540. *Id.* at 409. Although the Unions submitted declarations from representatives describing the "heart wrenching" experiences and fears of their members, the declarations constituted inadmissible hearsay and the testimony of Huang was "too generalized." *Id.* at 411-15. Thus, the court reversed the summary judgment and permanent injunction order, preserving the preliminary injunction and remanding the case to the trial court to determine whether particular employees would be placed in danger if the requested information was disclosed. *Id.* at 416.

The Court of Appeals also upheld declaratory relief for the Unions' constitutional claim. Reviewing federal due process law, the court "conclude[d] that under the substantive due process clause, article I, section 3 of the Washington Constitution, survivors of domestic violence, sexual assault, stalking, or harassment have a fundamental constitutional interest in preventing the release of information about their whereabouts when their perpetrators could use the information to locate them and inflict physical harm on them or their family members." *Id.* at 406, 405 (citing *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *Ingraham v. Wright*, 430 U.S. 651,

6

No. 101093-1

673-74, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)). Central to this holding is the "'state-created danger'" doctrine, which imposes liability on governments for failing to protect a person from third-party injury when the government created or increased that danger. *Id.* at 405 (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 201, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989); *Irish v. Fowler*, 979 F.3d 65, 73 (1st Cir. 2020)).

The Court of Appeals then applied strict scrutiny to the disclosure, reasoning that while release of employees' identity and work contact location serves a legitimate public interest in promoting transparency and public oversight, it was not narrowly tailored when abusers could use that information to locate and harm survivors. *Id.* at 407-08 (citing *Wash. Pub. Emps. Ass'n v. Wash. State Ctr. for Childhood Deafness & Hr'g Loss*, 194 Wn.2d 484, 508, 450 P.3d 601 (2019); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998)).

The Foundation sought discretionary review here, which we granted. Many of the named public agencies submitted answers to the petition for review, acknowledging the appeal and taking no position on the merits. We have received amici curiae briefing from Disability Rights Washington and the American Civil Liberties Union of Washington.

After we granted review, the legislature passed Engrossed Substitute House Bill (ESHB) 1533. ESHB 1533 creates an exemption under the PRA for an employee or their dependent if either is a survivor of domestic violence, sexual assault, stalking, or harassment as defined under the criminal procedure code; Victims of Sexual Assault Act,

7

No. 101093-1

ch. 70.125 RCW; or criminal code. The bill exempts from disclosure an employee's (or their dependent's) personally identifiable information such as job title, addresses of work stations and locations, work e-mail address, work phone number, or bargaining unit. LAWS OF 2023, ch. 458, § 1(i).

To qualify for the exemption, the employee must provide proof of participation in the address confidentiality program (ACP), ch. 40.24 RCW, to their employer or provide a sworn statement renewable biannually and verified by the director of the employing agency attesting that the employee or their dependent is a survivor of the types of offenses listed above and has a reasonable belief that the risk of those offenses continues to exist. LAWS OF 2023, ch. 458, § 1(i). The documentation maintained by an agency to facilitate the exemption is nondisclosable. *Id.* ESHB 1533 does not extend the exemption to requests from news media. *Id.*

### ANALYSIS

This case concerns procedural and substantive questions. Procedurally, the parties disagree whether the Unions have standing and have brought justiciable claims on behalf of their members. Substantively, the parties focus on whether the names and workplace contact information for public employees who are abuse survivors is exempt based on employees' constitutional right to personal safety and bodily security.

The Unions contend they meet standing and justiciability requirements. They further allege that a liberty interest exists under both state and federal constitutions, but they urge us to locate that interest in article I, section 3 rather than the Fourteenth

8

No. 101093-1

Amendment to the United States Constitution in light of the uncertainty in substantive due process law created by *Dobbs v. Jackson Women's Health Org.*, 597 U.S. __, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022).

We agree in part. The Unions meet the requirements for associational standing and brought justiciable claims, but they failed to show how individual public employees would be harmed by disclosure as required by RCW 42.56.540. Furthermore, because the legislature's recent enactment exempts the requested information from disclosure, this matter can be resolved with reference to the statute. *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000) ("Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds.").

1. Associational standing

"Standing" generally refers to a party's right to bring a legal claim. *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019). Courts may look to common law standing for guidance. *Id.* (citing *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004)). Standing is not intended to be a high bar. *Id.* at 712. It serves to prevent a party from raising another person's legal right. *Id.* When a party does not satisfy standing requirements, this court may relax the requirements for matters of substantial public importance that would otherwise evade review. *Id.* (citing *Grant County*, 150 Wn.2d at 803). "Standing is a question of law that we review de novo." *Id.* at 711 (citing *City of Snoqualmie v. Constantine*, 187 Wn.2d 289, 296, 386 P.3d 279 (2016)).

9

No. 101093-1

Groups have standing to bring suit on behalf of their members when "'(1) the members of the organization would otherwise have standing to sue in their own right; (2) the interests that the organization seeks to protect are germane to its purpose; and (3) neither claim asserted nor relief requested requires the participation of the organization's individual members.'" *Wash. State Nurses Ass'n v. Yakima HMA, LLC*, 196 Wn.2d 409, 415, 469 P.3d 300 (2020) (quoting *Int'l Ass'n of Firefighters, Loc. 1789 v. Spokane Airports*, 146 Wn.2d 207, 213-14, 45 P.3d 186 (2002)). No party disputes the first prong.

The Foundation asserts, but does not meaningfully argue, why the Unions fail to meet the second prong. Rather, the Foundation claims the Unions have a "'general dissatisfaction'" with and dislike for the practical effect of disclosure, which would allow their members to learn they may opt out of unions and result in loss of membership and dues. Pet. for Discr. Rev. at 14, 15. Nothing in the record demonstrates that self-preservation is the Unions' interest in prosecuting their members' PRA claims. For this reason alone, we need not further address the Foundation's argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Nevertheless, the Unions respond correctly that releasing the identity and work contact information of their members could jeopardize worker safety—an issue that is germane to the Unions and satisfies the second prong for standing. *See* Resp't Unions' Resp. to Pet. for Discr. Rev. at 28 (citing *King County v. Pub. Emp't Rels. Comm'n*, 94 Wn. App. 431, 440-41, 972 P.2 130 (1999) (recognizing that unions should bargain on

10

No. 101093-1

behalf of their members when an employment policy change undermines the safety of employees)).

The Foundation states that the third prong is not satisfied because the PRA claims require the "participation of individual members and the presentation of individualized proofs." Pet. for Discr. Rev. at 16 n.3. In *International Association of Firefighters*, this court noted that associations typically bring declaratory or injunctive relief that benefits every member equally whereas monetary damages may vary from employee to employee. 146 Wn.2d at 214. The Unions indeed sought injunctive and declaratory relief in this case, for which the remedy would "'inure to the benefit of *those members of the association actually injured.*'" *Wash. State Nurses Ass'n*, 196 Wn.2d at 416 (emphasis added) (internal quotation marks omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). That the Unions did not ultimately present admissible evidence of particular injury to obtain a permanent injunction under the PRA does not mean the Unions lacked *standing* to bring the claims in the first instance.

In any event, the Foundation does not provide useful argument on the issue but seems to imply that the Unions' failure to provide evidence of specific harm to their members is analogous to variable monetary damages and, as such, we should hold that the Unions lack standing. *See Int'l Ass'n of Firefighters*, 146 Wn.2d at 214. This analogy is unpersuasive. Union members may suffer vastly different amounts of monetary damages, making one action for the different claims administratively

11

No. 101093-1

burdensome. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) (the third prong of standing is employed for "administrative convenience and efficiency"). Here, on the other hand, the evidence alleged shows that a public employee (or their family member) is a domestic abuse survivor, and the survivor must demonstrate they suffered harm and their safety would be jeopardized by the release of the requested information. The scope of that harm is not at issue. That one survivor suffered more abuse (akin to greater monetary damages) than another survivor is irrelevant for standing purposes.

Additionally, we must consider the practicality of our standing doctrine to members who belong to an employee association and lack the means to bring a lawsuit on their own behalf. *Int'l Ass'n of Firefighters*, 146 Wn.2d at 216. Denying standing as the Foundation asks us to do would "likely burden individual members of the employee association economically and would almost certainly burden our courts with an increased number of lawsuits arising out of identical facts." *Id*. The Unions satisfy the three prongs for associational standing.[2]

---

[2] The Foundation criticizes the Court of Appeals for prioritizing the recognition of a novel fundamental right over critically examining the Unions' lack of standing when "the only parties who could make a case for 'personal security or bodily integrity' have never come forward—and likely never will, because their existence has simply been extrapolated from generalized statistics." Pet. for Discr. Rev. at 13. This point is not well taken. First, the Foundation conflates the requirement to present sufficient evidence for a permanent injunction with standing. The Unions plainly have associational standing. Second, the Foundation ignores the record. As stated above, the Unions collected declarations from survivors detailing their experiences of abuse and victimization, and moved to file those declarations under seal in the trial court. Third, the Foundation's statement implies a misunderstanding at best and a willful ignorance at worst of the prevalence of domestic violence and likelihood that past abusers will abuse again if given the opportunity. CP at 130 (Decl. of Grace Huang); *see also* Graham Farrell, *Preventing Repeat Victimization*, 19 CRIME & JUST. 469, 505 (1995) ("That domestic violence is likely to be a

12

No. 101093-1

2. <u>Preliminary and Permanent Injunctive Relief</u>

The Foundation seems to challenge the Court of Appeals' decision to maintain the preliminary injunction order. In lieu of providing relevant case law or authority, the Foundation relies on the existence of the ACP to argue that the preliminary injunction is unnecessary. As the Court of Appeals noted, the ACP protects from release the addresses of survivors who participate in the program. *WFSE*, 22 Wn. App. 2d at 409 n.10. But the Unions' domestic violence expert explained that the ACP inadequately addresses the survivors' concerns here because many victims "do not fall within the specific eligibility guidelines . . . and most importantly, many for whom the program does not make sense in their safety planning." Resp't Union's Resp. to Pet. for Discr. Rev. at 425. The Foundation offers no response to this evidence. We reject the Foundation's argument. The Court of Appeals properly preserved the preliminary injunction.

However, the Unions did not meet the requirements for a permanent injunction under the PRA. Pursuant to RCW 42.56.540, a plaintiff is entitled to a permanent injunction "only if the public records disclosure would clearly not be in the public interest, and would substantially and irreparably damage any person or would substantially and irreparably damage vital government functions." *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 785, 418 P.3d 102 (2018).

---

frequently repeated crime is well established."). A judicial determination that the survivors in this case did not present sufficient particularized evidence of harm does not mean they cannot do so, nor has it any bearing on the broader concern of revictimization in intimate partner and other forms of domestic violence.

13

No. 101093-1

Evidence supporting summary judgment and a permanent injunction must be admissible. *WFSE*, 22 Wn. App. 2d at 410-11 (citing *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014); CR 65(a)(2)). Unauthenticated or hearsay evidence does not suffice. *Id.* at 411.

As previously stated, the Unions submitted declarations from union representatives retelling the harrowing experiences of domestic violence and sexual abuse that other union members experienced. The trial court found that that the release of the requested information would "jeopardize[]" employees' "personal bodily security and lives," and "disclosure would not be in the public interest and unless enjoined, public employees . . . will suffer substantial and irreparable harm." CP at 246. Based on these findings, the trial court granted summary judgment and issued a permanent injunction.

The Court of Appeals reviewed this evidence, noting that the stories from union members were "heart wrenching" but constituted inadmissible hearsay. *WFSE*, 22 Wn. App. 2d at 411-13. Further, the court noted the only evidence showing that disclosure would endanger employee safety was the Huang declaration that lacked a specific connection to individual survivors. *Id.* at 413. This generalized testimony, the court concluded, does not meet RCW 42.56.540's requirement that a party demonstrates disclosure would "'clearly'" not be in the public interest and "'would substantially and irreparably damage any person.'" *Id.* at 414 (quoting RCW 42.56.540).

The Unions do not state directly that the Court of Appeals erred, but they urge us to review the record and conclude that it supports summary judgment and permanent

14

No. 101093-1

injunctive relief—contrary to the Court of Appeals' holding. The Unions argue that federal due process case law does not require particularized harm and that the record sufficiently shows the increased risk posed to survivors by disclosing their location. Implicit in this reasoning is that the PRA injunction provision, RCW 42.56.540, need not require individualized harm either.

While this issue was not raised in accordance with our appellate rules,[3] we exercise our discretion to address it. We agree with the Court of Appeals that the plain language of RCW 42.56.540 requires admissible evidence of individualized harm to warrant permanent injunctive relief.

Amicus curiae Disability Rights Washington challenges this interpretation. Amicus argues that the interpretation is unsupported by the statutory text and case law. We may, but usually do not, reach arguments raised only by amicus. *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016). Because we have interpreted RCW 42.56.540, we address this argument and conclude that it is inapposite to the facts presented. A party is entitled to a permanent injunction under RCW 42.56.540 if a court finds, in relevant part, that such examination "would substantially and irreparably damage *any* person." *Lyft, Inc.*, 190 Wn.2d at 785 (emphasis added). Amicus contends that the term "any" allows a showing of harm from a class or category of persons. But here the record contains no *admissible* evidence of harm for any or even one individual.

---

[3] The Unions raised the permanent injunction issue not in a cross motion for discretionary review but in its supplemental briefing. Our appellate rules make clear that this court will review questions raised only in a motion for discretionary review. RAP 13.7(b); *Wood v. Postelthwaite*, 82 Wn.2d 387, 388, 510 P.2d 1109 (1973).

15

No. 101093-1

Next, amicus cites *Planned Parenthood of Great Northwest v. Bloedow*, 187 Wn. App. 606, 350 P.3d 660 (2015), as allowing PRA injunction relief for groups of plaintiffs. That case is distinguishable. *Planned Parenthood* considered a set of PRA requests for abortion data from the state Department of Health. *Id.* at 609-10. The agency prepared a spreadsheet of information including a woman's age, city of residence, date of abortion and method, among other things. *Id*. at 615. Planned Parenthood and other providers sought to prevent disclosure. *Id.* The Court of Appeals agreed that the data was exempt, and the providers satisfied RCW 42.56.540. *Id.* at 628. Amicus Disability Rights Washington views this case as permitting injunctive relief for a class because the Court of Appeals did not require a showing of individualized harm, to any patient, provider, or abortion clinic. But the Court of Appeals relied on RCW 70.02.005(1), which expressly finds that "'[h]ealth care information is personal and sensitive information that if improperly used or released may do *significant* harm'" to patients and health care providers, and under RCW 70.02.005(3), providers "'have an interest in assuring that health care information is not improperly disclosed.'" *Planned Parenthood*, 187 Wn. App. at 628 (emphasis added) (alteration in original) (quoting RCW 70.02.005(1), (3)). State law already recognized significant harm, and no additional showing was needed to meet the PRA injunction standard. No comparable law is present here.

In short, there has been no showing that the Court of Appeals erred by keeping the preliminary injunction order in effect or in reversing summary judgment and permanent injunctive relief. We affirm the Court of Appeals.

16

No. 101093-1

### 3. Declaratory Relief

For declaratory relief, the UDJA states that a person whose "rights, status or other legal relations are affected by a statute" may seek judicial determination of the statute and obtain a declaration of rights. RCW 7.24.020. Standing "often overlap[s] with the requirement that the lawsuit present a justiciable controversy." *Wash. State Hous. Fin. Comm'n*, 193 Wn.2d at 711 n.4 (citing *To-Ro*, 144 Wn.2d at 411). As a remedial statute, the UDJA is to be liberally construed and administered. *Wash. Bankers Ass'n v. Dep't of Revenue*, 198 Wn.2d 418, 455, 495 P.3d 808 (2021) (quoting RCW 7.24.120), *cert. denied*, 142 S. Ct. 2828 (2022).

A justiciable controversy is

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*To-Ro*, 144 Wn.2d at 411 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). Appellate review of the merits of a declaratory judgment action generally occurs in two situations. *Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990). First, appellate courts can determine whether a trial court erroneously exercised its discretion in considering or refusing to consider an action. *Id.* Second, where a court decides the declaratory judgment action on its merits, an appellate court may review the propriety of the lower court's decision to grant or deny declaratory

17

No. 101093-1

relief. *Id.* Here, the parties dispute that a justiciable controversy exists and the trial court's grant of declaratory relief.

The Court of Appeals correctly held that the Unions brought justiciable claims on behalf of their members. *WFSE*, 22 Wn. App. 2d at 407. Whether public employees who are abuse survivors have a right to prevent the release of their personal information is a disputed by the Foundation. This meets the first two elements of justiciability.

The Foundation argues that the Unions failed to meet the third justiciability requirement. Under the UDJA, "[o]ne may not . . . challenge the constitutionality of a statute unless it appears that [they] will be directly damaged in person or in property by its enforcement." *DeCano v. State*, 7 Wn.2d 613, 616, 110 P.2d 627 (1941). In the Foundation's view, the injury alleged "thus far is entirely theoretical, hypothetical, and speculative" rather than direct and substantial. Suppl. Br of Pet'r Freedom Found. at 19; Pet. for Discr. Review at 11-12. But the Foundation relies too heavily on the notion that the harm must be proved and immediate. We have clarified that our cases analyzing direct injury rather than speculative injury look "to the type of injury alleged *rather than proof* of the extent of that injury." *Wash. State Hous. Fin. Comm'n*, 193 Wn.2d at 716 (emphasis added). Even an inference of injury can be enough to show injury for purposes of standing. *See id.* at 716-17. The Union's domestic violence expert Grace Huang's declaration stated that

> state employees who have experienced domestic violence, sexual assault,
> unlawful harassment, stalking, or human trafficking have a profound
> interest in avoiding substantial and irreparable injury to themselves, and
> their children. Their need to maintain the privacy and confidentiality of

18

No. 101093-1

> their personal identifying information, including their dates of birth, work addresses, and contact information is strongly linked to their safety, and in some instances, their very lives.
>
> . . . .
>
> . . . it is crucial for the safety and well-being of many state workers who have experienced domestic violence . . . that their personal identifying information . . . be kept private and confidential.

CP at 129-31. Huang also stated that the fear of being located can cause "high levels of distress" and "high rates of anxiety, social dysfunction, severe depression, and somatic symptoms." CP at 130.

The Huang declaration shows that both the threat of disclosure and disclosure itself would compromise the safety and well-being of survivors and their children, which are direct and substantial interests. Further, the third justiciability requirement "encompasses the doctrine of standing," *To-Ro*, 144 Wn.2d at 414, and as discussed above, the Unions have shown associational standing.

For the fourth prong, a judicial determination as to whether a privacy right exists for public employee survivors to their identities and contact information under the PRA and the scope of such a right would be final and conclusive, as the Court of Appeals held. *WFSE*, 22 Wn. App. 2d at 407. The Foundation does not contest the court's holding on this point.[4]

---

[4] In addition to associational standing, courts use a two-part test to determine whether a party's rights are affected by a statute under the UDJA. RCW 7.24.020; *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 302-03, 268 P.3d 892 (2011). First, "whether the interest sought to be protected is 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Wash. Bankers Ass'n*, 198 Wn.2d at 455 (internal quotation marks omitted) (quoting *Grant County*, 150 Wn.2d at 802). Second, "whether the challenged action has caused 'injury in fact,' economic or otherwise, to the party seeking standing." *Grant County*, 150 Wn.2d at 802 (internal quotation marks omitted) (quoting *Save a*

19

No. 101093-1

Finally, the Foundation contends that this case is not ripe for review. But the four-pronged justiciability test "encompasses the concepts of ripeness (the first prong) and standing (the third prong)." *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 847, 474 P.3d 589 (2020) (citing cases). The Unions satisfy the justiciability test, thus, they have shown the present case is ripe for review. *See id.* The Foundation offers no persuasive reason to reevaluate ripeness, instead relying on the Unions' lack of "standing to assert any constitutional claims for 'personal security or bodily integrity.'" Pet. for Discr. Rev. at 14. While standing and justiciability doctrines may overlap, they are distinct inquiries. *See, e.g.*, *Alim*, 14 Wn. App. 2d at 847. Accordingly, we hold that the Unions satisfy the justiciability requirements.

Turning to the merits of the trial court's grant of the requested declaratory relief, we will not disturb findings of fact that are supported by substantial evidence and we review conclusions of law de novo. *Nollette*, 115 Wn.2d at 600. Here, the trial court granted declaratory relief based on the substantive due process rights of public employee abuse survivors to their personal safety and bodily integrity under the state and federal constitutions. The Court of Appeals affirmed, but it limited its holding to article I, section 3 of the Washington Constitution. *WFSE*, 22 Wn. App. 2d at 406.

---

*Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). The Foundation does not address the two-part test here, but the Unions easily meet it. The interests the Unions seek to protect (that of their members who are abuse survivors) are within the zone of interest to be protected by the constitutional provisions and statutes alleged. U.S. CONST. amend. XVI; WASH. CONST. art. I, § 3; RCW 42.56.070(1); *Pub. Emp't Rel. Comm'n*, 94 Wn. App. at 440-41 (recognizing that unions should bargain on behalf of their members when an employment policy change undermines the safety of employees).

No. 101093-1

As a general matter, the due process clause of our state constitution does not offer broader protection than the Fourteenth Amendment. *In re Est. of Hambleton*, 181 Wn.2d 802, 823, 335 P.3d 398 (2014). We may independently evaluate whether our state constitution confers greater civil liberties than its federal counterpart pursuant to the factors set out in *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808 (1986).

The Unions did not argue that the state constitution provides greater due process protection in the courts below. The Court of Appeals' decision rested on article I, section 3 without adequate briefing and relied entirely on federal case law. *WFSE*, 22 Wn. App. 2d at 405-06.[5] Specifically, the court noted that the State's failure to prevent third-party harm does not violate due process yet found an exception to this rule under the "state-created danger doctrine." *Id.* at 405 (citing *DeShaney*, 489 U.S. at 197, 201; *Irish*, 979 F.3d at 73). This court has not adopted the state-created danger doctrine. *City of Seattle v. Long*, 13 Wn. App. 2d 709, 732 n.10, 467 P.3d 979 (2020), *aff'd in part and rev'd in part*, 198 Wn.2d 136, 493 P.3d 94 (2021). The Unions did not argue that such an exception should apply nor did they offer other state law in support. Further, considering the lack of evidence of individualized harm to affected public employees, a final declaratory judgment on the constitutional claim was premature.

---

[5] To determine whether our state constitution provides greater protection than its federal counterpart, we examine the constitutional guaranties in light of the following nonexclusive factors: (1) the textual language, (2) differences in the texts, (3) constitutional history, (4) preexisting state law, (5) structural differences, and (6) matters of particular state or local concern. *Gunwall*, 106 Wn.2d at 58. These factors assist briefing in cases where independent state grounds are urged and help ensure that if the court uses independent state grounds, the decision shall be based on well-founded legal reasons and not by merely substituting that court's own notions of justice for that of duly elected lawmakers. *Id.* at 62-63.

21

No. 101093-1

In this court, the Unions and amici provide a *Gunwall* analysis and urge us to address their article I, section 3 claim. We decline to do so because we can resolve this case on nonconstitutional grounds. *Tunstall*, 141 Wn.2d at 210. Prior to oral argument, Washington lawmakers enacted ESHB 1533, which exempts from disclosure the identity and work contact information for public employees who are survivors of abuse. LAWS OF 2023, ch. 458, § 1. The law is effective immediately. *Id.* at § 3. No party challenges the new exemption's applicability to the Foundation's PRA requests. The PRA's express grounds for exemptions should be examined first before considering whether an "other statute" exemption applies. RCW 42.56.070(1) ("Each agency . . . shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (8) of this section, this chapter, *or other statute* which exempts or prohibits disclosure of specific information or records." (emphasis added)). On remand, the trial court should consider the statutory exemption provided in ESHB 1533.

CONCLUSION

The Unions satisfy the requirements for justiciability and associational standing. Because the Unions did not present evidence of particularized harm to affected public employees as required by RCW 42.56.540, permanent injunctive relief was improper. We affirm the Court of Appeals on these grounds.

We reverse the Court of Appeals' decision to uphold declaratory relief based on article I, section 3. No party addressed *Gunwall* below or otherwise argued that

22

No. 101093-1

Washington law requires the State to prevent third-party harm. As this appeal was pending, our state legislature exempted the requested information. We therefore resolve the case on statutory grounds, and we decline to consider the constitutional issues presented. Accordingly, we remand this case to the superior court to consider the new statutory exemption as provided in ESHB 1533.

_____
Madsen, J.

WE CONCUR:

_____    _____
                                                     Gordon McCloud, J.

_____    _____
             Johnson, J.                                    Yu, J.

_____    _____
             Owens, J.                              Montoya-Lewis, J.

_____    _____
             Stephens, J.                              Leach, J.P.T.

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101093-1

APPENDIX

LIST OF ALL RESPONDENTS


ABERDEEN FIRE DEPARTMENT; AMALGAMATED TRANSIT UNION LEGISLATIVE COUNCIL OF WASHINGTON; AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES; AMERICAN FEDERATION OF TEACHERS WASHINGTON; BAINBRIDGE ISLAND FIRE DEPARTMENT; BATES TECHNICAL COLLEGE; BELLEVUE COLLEGE; BELLINGHAM TECHNICAL COLLEGE; BENTON COUNTY FIRE DISTRICT 1; BENTON COUNTY FIRE DISTRICT 4; BENTON COUNTY FIRE DISTRICT 6; BENTON COUNTY FIRE PROTECTION DISTRICT 2; BENTON COUNTY PUBLIC UTILITY DISTRICT; BIG BEND COMMUNITY COLLEGE; DEPARTMENT OF SERVICES FOR THE BLIND; WASHINGTON STATE SCHOOL FOR THE BLIND; BOARD OF INDUSTRIAL INSURANCE APPEALS; BREMERTON FIRE DEPARTMENT; BREMERTON HOUSING AUTHORITY; CAMAS-WASHOUGAL FIRE DEPARTMENT; CASCADE MEDICAL CENTER; CASCADIA COLLEGE; CENTRAL KITSAP FIRE AND RESCUE; CENTRAL PIERCE FIRE AND RESCUE - PIERCE COUNTY FIRE DISTRICT 6; CENTRAL WASHINGTON UNIVERSITY; CENTRALIA COLLEGE; CHEHALIS FIRE DEPARTMENT; CHELAN COUNTY FIRE DISTRICT 7; CHELAN COUNTY PUBLIC UTILITY DISTRICT; CHELAN-DOUGLAS HEALTH DISTRICT; CITY OF ABERDEEN; CITY OF ALGONA; CITY OF AUBURN; CITY OF BLACK DIAMOND; CITY OF BOTHELL; CITY OF BUCKLEY; CITY OF CHENEY; CITY OF CLARKSTON; CITY OF COLLEGE PLACE; CITY OF EDMONDS; CITY OF ELLENSBURG; CITY OF ELMA; CITY OF FIFE; CITY OF GIG HARBOR; CITY OF KENNEWICK; CITY OF KENT; CITY OF KIRKLAND; CITY OF LAKE FOREST PARK; CITY OF MERCER ISLAND; CITY OF MOSES LAKE; CITY OF MUKILTEO; CITY OF ORTING; CITY OF PASCO; CITY OF PORT ANGELES; CITY OF PULLMAN; CITY OF QUINCY; CITY OF REDMOND; CITY OF RICHLAND; CITY OF SEATTLE; CITY OF SNOHOMISH; CITY OF SNOQUALMIE; CITY OF SPOKANE VALLEY; CITY OF SPOKANE; CITY OF SUMNER; CITY OF SUNNYSIDE; CITY OF TACOMA; CITY OF TUKWILA; CITY OF TUMWATER;  CITY OF WENATCHEE; CITY OF WINLOCK; CITY OF WOODINVILLE; CLALLAM COUNTY FIRE DISTRICT 3; CLALLAM COUNTY PUBLIC UTILITY DISTRICT; CLALLAM TRANSIT; CLARK COLLEGE; CLARK COUNTY FIRE AND RESCUE; CLARK COUNTY FIRE DISTRICT 3; CLARK COUNTY FIRE DISTRICT 6; CLARK COUNTY PUBLIC HEALTH;CLARK COUNTY PUBLIC UTILITY DISTRICT; CLOVER PARK TECHNICAL COLLEGE; COLUMBIA BASIN COLLEGE; COLUMBIA COUNTY FIRE DISTRICT 3; COMMUNITY COLLEGES OF SPOKANE; COMMUNITY TRANSIT; CONSOLIDATED COUNCIL OF FIRE FIGHTERS; CONSOLIDATED TECHNOLOGY SERVICES; COULEE CITY FIRE DEPARTMENT; COWLITZ 2 FIRE AND RESCUE; COWLITZ COUNTY FIRE DISTRICT 5; COWLITZ COUNTY FIRE DISTRICT 6; C-TRAN; DEPARTMENT OF AGRICULTURE; DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES; DEPARTMENT OF COMMERCE; DEPARTMENT OF CORRECTIONS; DEPARTMENT OF

24

No. 101093-1

ECOLOGY; DEPARTMENT OF ENTERPRISE SERVICES; DEPARTMENT OF FISH AND WILDLIFE; DEPARTMENT OF HEALTH; DEPARTMENT OF LABOR AND INDUSTRIES; DEPARTMENT OF LICENSING; DEPARTMENT OF NATURAL RESOURCES; DEPARTMENT OF RETIREMENT SYSTEMS; DEPARTMENT OF REVENUE; DEPARTMENT OF SOCIAL AND HEALTH SERVICES; DEPARTMENT OF TRANSPORTATION; DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS COUNTY FIRE DISTRICT 2; DUPONT FIRE DEPARTMENT; DUVALL-KING COUNTY FIRE DISTRICT 45; EAST COUNTY FIRE AND RESCUE; EAST JEFFERSON FIRE AND RESCUE; EAST PIERCE FIRE AND RESCUE; EASTERN WASHINGTON UNIVERSITY; EDMONDS COLLEGE; ELLENSBURG PUBLIC LIBRARY; EMPLOYMENT SECURITY DEPARTMENT; ENERGY NORTHWEST; EVERETT COMMUNITY COLLEGE; EVERETT TRANSIT; EVERGREEN HEALTH; EVERGREEN HOSPITAL; FERRY AGENTS, SUPERVISORS, AND PROJECT ADMINISTRATORS ASSOCIATION; FRANKLIN COUNTY FIRE DISTRICT 3; FRANKLIN COUNTY PUBLIC UTILITY DISTRICT; GENERAL TEAMSTERS LOCAL 313; GIG HARBOR FIRE & MEDIC ONE / PIERCE COUNTY FIRE DISTRICT 5; GRAHAM FIRE & RESCUE / PIERCE COUNTY FIRE PROTECTION DISTRICT 21; GRANDVIEW FIRE DEPARTMENT; GRANT COUNTY FIRE DISTRICT 3; GRANT TRANSIT AUTHORITY; GRAYS HARBOR COLLEGE; GRAYS HARBOR COMMUNITY HOSPITAL; GRAYS HARBOR COUNTY PUBLIC UTILITY DISTRICT; GRAYS HARBOR COUNTY; GRAYS HARBOR FIRE DISTRICT 2; GRAYS HARBOR FIRE DISTRICT 5; GRAYS HARBOR FIRE DISTRICT 7; GRAYS HARBOR TRANSIT; GREEN RIVER COLLEGE; HANFORD FIRE DEPARTMENT; HIGHLINE COLLEGE; HOQUIAM FIRE DEPARTMENT; HUMAN RIGHTS COMMISSION; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 76; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 77; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCALS 46 AND 483; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCALS 117, 252, 760, 763, AND 690; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 302; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 609; ISLAND TRANSIT; JEFFERSON COUNTY PUBLIC UTILITY DISTRICT; JEFFERSON TRANSIT; KEY PENINSULA FIRE DEPARTMENT / PIERCE COUNTY FIRE DISTRICT 16; KING COUNTY FIRE DISTRICT 20; KING COUNTY FIRE DISTRICT 27; KING COUNTY HOUSING AUTHORITY; KING COUNTY METRO; KING COUNTY SHERIFF'S OFFICE; KING COUNTY WATER DISTRICT 125; KING COUNTY; KITSAP COUNTY; KITSAP PUBLIC HEALTH DISTRICT; KITSAP REGIONAL LIBRARY; KITSAP TRANSIT; KITTITAS COUNTY PUBLIC UTILITY DISTRICT; KITTITAS COUNTY; KITTITAS VALLEY HEALTHCARE; KLICKITAT COUNTY EMS DISTRICT 1; KLICKITAT COUNTY PUBLIC UTILITY DISTRICT; LACEY FIRE DISTRICT 3; LAKE WASHINGTON INSTITUTE OF TECHNOLOGY; LAKEHAVEN UTILITY DISTRICT; LEWIS COUNTY FIRE DISTRICT 6; LEWIS COUNTY MEDIC ONE; LEWIS COUNTY PUBLIC UTILITY DISTRICT; LONGVIEW FIRE DEPARTMENT; LOWER COLUMBIA COLLEGE; MARYSVILLE FIRE DISTRICT; MASON COUNTY EMERGENCY COMMUNICATIONS (MACECOM); MASON COUNTY FIRE DEPARTMENT 4; MASON COUNTY FIRE

25

DEPARTMENT 5; MASON COUNTY PUBLIC UTILITY DISTRICT NO. 1; MASON COUNTY PUBLIC UTILITY DISTRICT NO. 3; MASON COUNTY; MCLANE FIRE DEPARTMENT; MCNEIL ISLAND FIRE DEPARTMENT; METROPOLITAN PARK DISTRICT OF TACOMA; MONTESANO FIRE DEPARTMENT; NORTH COUNTRY EMERGENCY MEDICAL SERVICE; NORTH KITSAP FIRE AND RESCUE; NORTH MASON REGIONAL FIRE AUTHORITY; NORTHSHORE FIRE DEPARTMENT; NORTHSHORE SCHOOL DISTRICT; OCEAN BEACH HOSPITAL; OCEAN SHORES FIRE DEPARTMENT; OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 8; OFFICE OF FINANCIAL MANAGEMENT; OFFICE OF THE ATTORNEY GENERAL; OFFICE OF THE INSURANCE COMMISSIONER; OFFICE OF THE SECRETARY OF STATE; OKANOGAN COUNTY FIRE DISTRICT 6; OKANOGAN COUNTY PUBLIC UTILITY DISTRICT; OLYMPIA FIRE DEPARTMENT; OLYMPIC COLLEGE; PACIFIC COUNTY FIRE DISTRICT 1; PACIFIC COUNTY PUBLIC UTILITY DISTRICT; PACIFIC TRANSIT SYSTEM; PEND OREILLE COUNTY PUBLIC UTILITY DISTRICT; PENINSULA COLLEGE; PIERCE COLLEGE; PIERCE COUNTY BUILDING & CONSTRUCTION TRADES COUNCIL; PIERCE COUNTY FIRE DISTRICT 27; PIERCE COUNTY HOUSING AUTHORITY; PIERCE COUNTY PROSECUTING ATTORNEYS ASSOCIATION; PIERCE COUNTY; PIERCE TRANSIT; PORT LUDLOW FIRE & RESCUE; PORT OF SEATTLE; POULSBO FIRE DEPARTMENT; PROTEC17; PUBLIC SCHOOL EMPLOYEES OF WASHINGTON, SEIU LOCAL 1948; PULLMAN REGIONAL HOSPITAL; QUILCENE FIRE RESCUE AKA JEFFERSON COUNTY FIRE PROTECTION DISTRICT 2; RAINIER FIRE DEPARTMENT; RAYMOND FIRE DEPARTMENT;RENTON REGIONAL FIRE AUTHORITY; RENTON TECHNICAL COLLEGE; RIVERCITIES TRANSIT; RIVERSIDE FIRE AUTHORITY; ROZA IRRIGATION DISTRICT; SAMARITAN HEALTHCARE; SAN JUAN ISLAND EMS AND MEDEVAC; the following school districts: ABERDEEN SD #5, ADNA SD #226, ALMIRA SD #17, ANACORTES SD #103, ARLINGTON SD #16, ASOTIN-ANATONE SD #420, AUBURN SD #408, BAINBRIDGE ISLAND SD #303, BATTLE GROUND SD #119, BELLEVUE SD #405, BELLINGHAM SD #501, BETHEL SD #403, BLAINE SD #503, BREMERTON SD #100-C, BREWSTER SD #111, BRIDGEPORT SD #75, BRINNON SD #46, BURLINGTON-EDISON SD #100, CAMAS SD #117, CAPE FLATTERY SD #401, CASCADE SD #228, CASHMERE SD #222, CASTLE ROCK SD #401, CENTERVILLE SD #215, CENTRAL KITSAP SD #401, CENTRAL VALLEY SD #356, CENTRALIA SD #401, CHEHALIS SD #302, CHENEY SD #360, CHEWELAH SD #36, CHIMACUM SD #49, CLARKSTON SD #J 250-185, CLE ELUM-ROSLYN SD #404, CLOVER PARK SD #400, COLFAX SD #300, COLLEGE PLACE SD #250, COLTON SD #306, COLUMBIA (STEVENS) SD #206, COLUMBIA (WALLA WALLA) SD #400, COLVILLE SD #115, CONCRETE SD #11, CONWAY SD #317, COSMOPOLIS SD #99, COUPEVILLE SD #204, CRESCENT SD #313, CRESTON SD #073, CUSICK SD #59, DAMMAN SD #7, DARRINGTON SD #330, DAVENPORT SD #207, DAYTON SD #2, DEER PARK SD #414, DIERINGER SD #343, EAST VALLEY SPOKANE SD #361, EAST VALLEY YAKIMA SD #90, EASTMONT SD #206, EASTON SD #28, EATONVILLE SD #404, EDMONDS SD #15, EDUCATIONAL SERVICE DISTRICT #101, EDUCATIONAL SERVICE DISTRICT #112, EDUCATIONAL SERVICE DISTRICT #113,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101093-1

ELLENSBURG SD #401, ELMA SD #68, ENDICOTT SD #308, ENTIAT SD #127, ENUMCLAW SD #216, EPHRATA SD #165, EVERETT SD #2, EVERGREEN (CLARK) SD #114, EVERGREEN (STEVENS) SD #205, FEDERAL WAY SD #210, FERNDALE SD #502, FIFE SD #417, FINLEY SD #53, FRANKLIN PIERCE SD #402, FREEMAN SD #358, GARFIELD SD #302, GOLDENDALE SD #404, GRAND COULEE DAM SD #301J, GRANDVIEW SD #116-200, GRANGER SD #204, GRANITE FALLS SD #332, GRAPEVIEW SD #54, GREAT NORTHERN SD #312, GREEN MOUNTAIN SD #103, GRIFFIN SD #324, HARRINGTON SD #204, HIGHLAND SD #203, HIGHLINE SD #401, HOCKINSON SD #98, HOOD CANAL SD #404, HOQUIAM SD #28, INCHELIUM SD #70, ISSAQUAH SD #411, KAHLOTUS SD 56, KALAMA SD #402, KELLER SD #3, KELSO SD #458, KENNEWICK SD #17, KENT SD #415, KETTLE FALLS SD #212, KIONA-BENTON CITY SD #52, KITTITAS SD #403, KLICKITAT SD #402, LA CENTER SD #101, LA CONNER SD #311, LACROSSE SD #126, LAKE CHELAN SD #129, LAKE QUINAULT SD #97, LAKE STEVENS SD #4, LAKE WASHINGTON SD #414, LAKEWOOD SD #306, LAMONT SD #264, LIBERTY SD #362, LIND SD #158, LONGVIEW SD #122, LOON LAKE SD #183, LOPEZ ISLAND SD #144, LYLE SD #406, LYNDEN SD #504, MABTON SD #120, MANSFIELD SD #207, MANSON SD #19, MARY M KNIGHT SD #311, MARY WALKER SD #207, MARYSVILLE SD #25, MCCLEARY SD #65, MEAD SD #354, MEDICAL LAKE SD #326, MERCER ISLAND SD #400, MERIDIAN SD #505, METHOW VALLEY SD #350, MONROE SD #103, MONTESANO SD #66, MORTON SD #214, MOSES LAKE SD #161, MOSSYROCK SD #206, MOUNT ADAMS SD #209, MOUNT BAKER SD #507, MOUNT PLEASANT SD #29-93, MOUNT VERNON SD #320, MUKILTEO SD #6, NACHES VALLEY SD #3, NAPAVINE SD #14, NASELLE-GRAYS RIVER VALLEY SD #155, NESPELEM SD #14, NEWPORT SD #56-415, NINE MILE FALLS SD #325, NOOKSACK VALLEY SD #506, NORTH BEACH SD #64, NORTH FRANKLIN SD #J51-162, NORTH KITSAP SD #400, NORTH MASON SD #403, NORTH RIVER SD #200, NORTH THURSTON SD #3, NORTHPORT SD #211, NORTHSHORE SD #417, OAK HARBOR SD #201, OAKVILLE SD #400, OCEAN BEACH SD #101, OCOSTA SD #172, ODESSA SD #105-157-166J, OKANOGAN SD #105, OLYMPIA SD #111, OMAK SD #19, ONALASKA SD #300, ONION CREEK SD #30, ORCAS ISLAND SD #137, ORIENT SD #65, ORONDO SD #13, OROVILLE SD #410, ORTING SD #344, OTHELLO SD #147-163-55, PALOUSE SD #301, PASCO SD #1, PATEROS SD #122, PE ELL SD #301, PENINSULA SD #401, PIONEER SD #402, POMEROY SD #110, PORT ANGELES SD #121, PORT TOWNSEND SD #50, PRESCOTT SD #402-37, PROSSER SD #116, PUGET SOUND EDUCATIONAL SERVICE DISTRICT #121 (RENTON), PULLMAN SD #267, PUYALLUP SD #3, QUEETS-CLEARWATER SD #20, QUILCENE SD #48, QUILLAYUTE VALLEY SD #402, QUINCY SD #144-101, RAINIER SD #307, RAYMOND SD #116, REARDAN-EDWALL SD #9, RENTON SD #403, REPUBLIC SD #309, RICHLAND SD #400, RIDGEFIELD SD #122, RITZVILLE SD #160-67, RIVERSIDE SD #416, RIVERVIEW SD #407, ROCHESTER SD #401, ROSALIA SD #320, ROYAL SD #160, SAN JUAN ISLAND SD #149, SEATTLE SD #1, SEDRO-WOOLLEY SD #101, SELAH SD #119, SELKIRK SD #70, SEQUIM SD #323, SHELTON SD #309, SHORELINE SD #412, SKYKOMISH SD #404, SNOHOMISH SD #201, SNOQUALMIE VALLEY SD #410, SOAP LAKE SD #156, SOUTH

27

No. 101093-1

BEND SD #118, SOUTH KITSAP SD #402, SOUTH WHIDBEY SD #206, SOUTHSIDE SD #42, SPOKANE SD #81, SPRAGUE SD #8, STANWOOD-CAMANO SD #401, STEILACOOM HISTORICAL SD #1, STEVENSON-CARSON SD #303, SULTAN SD #311,SUMNER-BONNEY LAKE SD #320, SUNNYSIDE SD #201, TACOMA SD #10, TAHOLAH SD #77, TAHOMA SD #409, TEKOA SD #265, TENINO SD #402, THORP SD #400, TOLEDO SD #237, TONASKET SD #404, TOPPENISH SD #202, TOUCHET SD #300, TOUTLE LAKE SD #130, TUKWILA SD #406, TUMWATER SD #33, UNION GAP SD #2, UNIVERSITY PLACE SD #83, VALLEY SD #070, VANCOUVER SD #37, VASHON ISLAND SD #402, WAHKIAKUM SD #200, WAHLUKE SD #73, WAITSBURG SD #401, WALLA WALLA SD #140, WAPATO SD #207, WARDEN SD #146-161, WASHOUGAL SD #112-6, WASHTUCNA SD #109-43, WATERVILLE SD #209, WELLPINIT SD 49, WENATCHEE SD #246, WEST VALLEY (SPOKANE) #363, WEST VALLEY (YAKIMA) SD #208, WHITE PASS SD #303, WHITE RIVER SD #416, WHITE SALMON SD #405, WILBUR SD #200, WILLAPA VALLEY SD #160, WILSON CREEK SD #167-202, WINLOCK SD #232, WISHKAH VALLEY SD #117, WISHRAM SD #94, WOODLAND SD #404, YAKIMA SD #7, YELM SD #2, AND ZILLAH SD #205; SCORE; SEATTLE & KING COUNTY PUBLIC HEALTH; SEATTLE BUILDING AND CONSTRUCTION TRADES COUNCIL; SEATTLE CITY LIGHT; SEATTLE COLLEGES DISTRICT; SEATTLE HOUSING AUTHORITY; SEATTLE PUBLIC SCHOOLS FOR LOCAL 609; SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 925; SHORELINE COMMUNITY COLLEGE; SHORELINE FIRE DEPARTMENT; SKAGIT COUNTY PUBLIC UTILITY DISTRICT; SKAGIT REGIONAL HEALTH; SKAGIT VALLEY COLLEGE; SKAMANIA COUNTY EMERGENCY MEDICAL SERVICES; SKYLINE HOSPITAL; SNOHOMISH COUNTY FIRE DISTRICT 15; SNOHOMISH COUNTY FIRE DISTRICT 4; SNOHOMISH COUNTY FIRE DISTRICT 7; SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT; SNOHOMISH COUNTY; SNOHOMISH HEALTH DISTRICT; SOUND TRANSIT; SOUTH BAY FIRE DISTRICT 8; SOUTH BEACH REGIONAL FIRE AUTHORITY; SOUTH KITSAP FIRE AND RESCUE; SOUTH PIERCE FIRE AND RESCUE; SOUTH PUGET SOUND COMMUNITY COLLEGE; SOUTH SNOHOMISH COUNTY FIRE & RESCUE; SPOKANE COUNTY FIRE DISTRICT 10; SPOKANE COUNTY FIRE DISTRICT 8; SPOKANE COUNTY FIRE DISTRICT 9; SPOKANE COUNTY; SPOKANE INTERNATIONAL AIRPORT;SPOKANE REGIONAL HEALTH DISTRICT; SPOKANE TRANSIT AUTHORITY; SPOKANE VETERANS HOME; STATE OF WASHINGTON; STEVENS COUNTY FIRE PROTECTION DISTRICT 1; SUNNYSIDE VALLEY IRRIGATION DISTRICT; TACOMA COMMUNITY COLLEGE; TACOMA HOUSING AUTHORITY; TACOMA-PIERCE COUNTY HEALTH DEPARTMENT; TACOMA-PIERCE COUNTY HUMANE SOCIETY; THE EVERGREEN STATE COLLEGE; THURSTON COUNTY FIRE DISTRICT 4; THURSTON COUNTY FIRE DISTRICT 9; THURSTON COUNTY PUBLIC UTILITY DISTRICT; TOWN OF STEILACOOM; TULALIP BAY FIRE DEPARTMENT; TUMWATER FIRE & EMERGENCY MEDICAL SERVICES; UNITED ASSOCIATION OF PLUMBERS & PIPEFITTERS, LOCAL 32; UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 21; UNIVERSITY OF WASHINGTON HOUSESTAFF ASSOCIATION; UNIVERSITY OF WASHINGTON POLICE; UNIVERSITY OF

28

WASHINGTON; UW MEDICINE – UNIVERSITY OF WASHINGTON MEDICAL CENTER; UW PHYSICIANS; VALLEY TRANSIT; VANCOUVER FIRE DEPARTMENT; VASHON WATER DISTRICT 19; WALLA WALLA COMMUNITY COLLEGE; WALLA WALLA COUNTY FIRE DISTRICT 4; WALLA WALLA COUNTY FIRE DISTRICT 5; WALLA WALLA VETERANS HOME; WASHINGTON  STATE PATROL; WASHINGTON AND NORTHERN IDAHO DISTRICT COUNCIL OF LABORERS; WASHINGTON AND TRANSPORTATION COMMISSION; WASHINGTON EDUCATION ASSOCIATION; WASHINGTON FEDERATION OF STATE EMPLOYEES, COUNCIL 28; WASHINGTON MILITARY DEPARTMENT; WASHINGTON PUBLIC EMPLOYEES ASSOCIATION, UFCW LOCAL 365; WASHINGTON SOLDIERS HOME; WASHINGTON STATE ARTS COMMISSION; WASHINGTON STATE CENTER FOR CHILDHOOD DEAFNESS AND HEARING LOSS; WASHINGTON STATE CONVENTION CENTER; WASHINGTON STATE COUNCIL OF COUNTY AND CITY EMPLOYEES, AFSCME COUNCIL 2; WASHINGTON STATE CRIMINAL JUSTICE TRAINING COMMISSION; WASHINGTON STATE FERRIES;WASHINGTON STATE HEALTH CARE AUTHORITY; WASHINGTON STATE HORSE RACING COMMISSION; WASHINGTON STATE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS; WASHINGTON STATE LIQUOR AND CANNABIS BOARD; WASHINGTON STATE LIQUOR CONTROL BOARD; WASHINGTON STATE NURSES ASSOCIATION; WASHINGTON STATE OFFICE OF ADMINISTRATIVE HEARINGS; WASHINGTON STATE OFFICE OF MINORITY AND WOMEN'S BUSINESS ENTERPRISES; WASHINGTON STATE PARKS AND RECREATION COMMISSION; WASHINGTON STATE PRINTER; WASHINGTON STATE RECREATION AND CONSERVATION OFFICE; WASHINGTON STATE UNIVERSITY; WASHINGTON VETERANS HOME; WASHINGTON WORKFORCE TRAINING AND EDUCATION COORDINATING BOARD; WASHINGTON'S LOTTERY; WENATCHEE VALLEY COLLEGE; WEST BENTON FIRE RESCUE; WEST PIERCE FIRE & RESCUE; WEST THURSTON REGIONAL FIRE AUTHORITY; WESTERN WASHINGTON UNIVERSITY; WHATCOM COMMUNITY COLLEGE; WHATCOM COUNTY HEALTH DEPARTMENT; WHATCOM TRANSPORTATION AUTHORITY; WHIDBEYHEALTH; WILLAPA HARBOR HOSPITAL; WOODINVILLE FIRE AND RESCUE; WOODLAND PARK ZOO; YAKIMA COUNTY FIRE DISTRICT #4 / EAST VALLEY FIRE DEPARTMENT; YAKIMA HEALTH DISTRICT; YAKIMA TIETON IRRIGATION DISTRICT; AND YAKIMA VALLEY COLLEGE.

No. 101093-1

GONZÁLEZ, C.J. (concurring in result) — This case raises profound and difficult questions. I concur with the majority that Laws of 2023, chapter 458 resolves those questions in this case, and under chapter 458, the proper remedy is to remand this case to the trial court to allow for the application of that statute. I would decline, however, to reach the proper interpretation of the Public Records Act, ch. 42.56 RCW, in such a case or the propriety of the trial court's injunctions. Accordingly, I do not join those portions of the court's decision today.

I respectfully concur in result.

González C.J.
_____
González, C.J.